UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

JOSE GARCIA, et al.,

Plaintiffs,

vs.

SERVICE EMPLOYEES INTERNATIONAL UNION, et al.,

Defendants.

Case No: C 09-4865 SBA

**ORDER DENYING PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**

A hearing on Plaintiffs' "Ex-parte application for Temporary Restraining Order and Order to Show Cause re: Issue of Preliminary Injunction," was held by the Court on October 22, 2009. Dan Siegel and Jose Luis Fuentes appeared for Plaintiffs. Antonio Ruiz appeared for Defendants.

After consideration of the legal briefs, evidentiary declarations and submissions, oral arguments of the parties, and applicable law, the Court DENIES the application.

**I. BACKGROUND**

The eight Plaintiffs in this action: Jose Garcia, Hector Rincon, Amelia Medina, Doroteo Garcia, Laura Plummer, Argelio Cordova, Oscar Alonzo, and John Gray are members of a Local 1877 of the Service Employees International Union ("SEIU"). The law suit alleges violations of the Labor management Reporting and Disclosure Act ("LMRDA") at 29 U.S.C. § 401 et seq., by Defendant SEIU, Local 1877 and individual officers of the union. Among

other claims, Plaintiffs seek the following relief:

> 4. An order preliminarily staying the discipline against Plaintiffs and union members such that defendants are required to place plaintiffs and other union members names on the ballot as candidates for the office of President and Executive board in an election to be conduct (sic) in 3 months from the Court's order.

Local 1877 has approximately 35,000 members, located in California and organized into a Southern Regional District containing 23 Divisions, and a Northern District containing 21 Divisions. A periodic election, of statewide officers as well as officers in each of the districts and divisions within the state, is held every 3 years. An election is now scheduled to be held on October 29, 2009. A notice of nominations was distributed to the union members during the summer of 2009 and the nomination process has now been completed. As of the time of this Court's hearing on October 22, 2009, a final ballot, listing multiple candidates to fill each of the union offices in the regional districts and the divisions within them, has been printed in preparation for the election. This ballot has already been sent to absentee voters and it appears that some votes have already been cast.

Described generally, this lawsuit claims that that Plaintiffs have been unlawfully disqualified by representatives of Local 1877 from running for office in the upcoming election; that this conduct violates the LMRDA; that the election should be called off; that they should be added as candidates on the ballot; and, that an election including them as candidates should be held in about 3 months.

//

//

## II. APPLICABLE LAW

### A. Granting Requirements for Preliminary relief

In any case where a party seeks the extraordinary remedy of preliminary relief by way of a Temporary Restraining Order ("TRO") or a Preliminary Injunction, the party must meet exacting criteria. The legal standard for a TRO is the same as for a preliminary injunction. See Lockheed Missile & Space Co. v. Hughes Aircraft, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995); c.f., Motor Vehicle Board of Cal. v. Orrin W. Fox, 434 U.S. 1345, 1347 n.2 (1977). The standard for assessing a motion for preliminary injunction is set forth in Winter v. Natural Res. Def. Council, Inc., ---U.S. ---, 129 S.Ct. 365, 376 (2008). “Under Winter, plaintiffs seeking a preliminary injunction must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) a preliminary injunction is in the public interest.” Sierra Forest Legacy v. Rey, --- F.3d ---, 2009 WL 2462216 at *3 (9th Cir. Aug. 13, 2009).

### B. Preliminary Relief Under the LMRDA

The legal standard applicable to the question of whether a District Court should grant preliminary relief in cases brought under the LMRDA concerning union elections, has been established by the United States Supreme Court in the seminal case of Local 82, Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen and Packers v. Crowley, 467 U.S. 526 (1984). In Crowley, Local 82 held a nomination meeting regarding union

candidates for an upcoming election for union officers. At the meeting it was decided that one of the members of the union who wished to run for the position of Secretary - Treasurer, would not be able to run for that position, but that he would be allowed to run for President. Thereafter, ballots for the election were prepared and distributed to the members, who were instructed to mark their ballots and return them by mail. Before the designated return date, some members of the union filed a complaint alleging a violation of the LMRDA and seeking to enjoin the upcoming election. The District Court issued a TRO ordering that ballots be seized and delivered to the court pending a hearing on whether or not a preliminary injunction should be issued. The District Court then found that the plaintiffs had demonstrated a substantial likelihood of success on their LMRDA claim and issued an injunction ordering that new ballots be prepared and a new election conducted. On appeal, the United States Supreme Court reversed, holding that the District Court should not have granted preliminary relief. In its opinion, the Supreme Court explained that the LMRDA contained two different Titles dealing with the subject matter of union elections. Title I enacted a Statutory "Bill of Rights" for union members protecting their rights in union elections with enforcement and remedies available in district courts. Title IV provides for post-election procedures designed to protect free and democratic union elections with primary enforcement responsibility delegated to the Secretary of Labor. The Supreme Court noted that the enforcement mechanisms established by these Titles were in apparent conflict and that they would have to decide whether suits alleging Title I

violations could be properly heard by district courts during the course of a union election. To resolve this issue the Supreme Court noted that Congress had limited the judicial remedies that could be awarded by district courts for violations of Title I to cases where the relief was "appropriate." At the same time the Supreme Court noted that Congress had clearly indicated its intent to consolidate consideration of challenges to union elections with the Secretary of Labor, and to rely on the Secretary's expertise to supervise any new election should that be necessary. Moreover, the Supreme Court cited Congressional testimony which described a court as a "clumsy instrument" for supervising such an election. See Testimony of Professor Archibald Cox, Senate Hearing on Labor-Management Reform Legislation, 86th Cong. 1959. The Supreme Court resolved the question it had posed by holding that: "we are compelled to conclude that Congress did not consider court supervision of union elections to be an 'appropriate' remedy for a Title I suit filed during the course of a union election. § 102, 29 U.S.C. § 412." Id. at 546.

At the same time, the Supreme Court recognized that district courts did have jurisdiction over Title I suits and that there may be cases where Title I relief is appropriate when an election is being conducted. The Supreme Court noted, however, that any such case would be limited to "violations of Title I that are easily remediable under that Title without substantially delaying or invalidating an ongoing election." Id. at 546. The Supreme Court explained that the district court is to consider the appropriateness of the remedy required to eliminate the claimed violation of Title I. District courts are instructed that "If the

remedy sought is invalidation of the election already being conducted with court supervision of a new election, the union members must utilize the remedies provided by Title IV." Id. at 550.

**C. Substantive LMRDA Violations**

Under 29 U.S.C. § 411(a)(2) of the LMRDA, union members are protected against infringement of their free speech rights by employers. To prove a violation of this section a plaintiff must prove: (1) exercise of the right to oppose union leadership or union policies, (2) subjection to retaliatory action, and (3) the retaliatory action was a direct result of the decision to express disagreement with union leadership or union policy. Casumpang v. International Longshoremen's and Warehousemen's Union, Local 182, 269 F.3d 1042, 1058 (9th Cir. 2001).

29 U.S.C. § 529 of the LMRDA make it unlawful to "fine, suspend, expel, or otherwise discipline" a union member for the exercise of any right to which he or she is entitled. By using the term, "otherwise discipline," "Congress did not intend to include all acts that deterred their exercise of rights protected under the LMRDA, but rather meant instead to denote only punishment authorized by the union as a collective entity to enforce its rules." Breininger v. Sheet Metal Workers Intern. Ass'n Local Union No. 6, 493 U.S. 67, 91 (1989). "Discipline" in this statute refers to actions taken under the color of union authority and implies action taken according to "some sort of established disciplinary process rather than ad hoc retaliation by individual union officers." Id. at 91-92.

//

//

**III. DISCUSSION**

Plaintiff Jose Garcia has been a member of Local 1877 for 16 years. He filed nomination papers to run for a position as an Executive Board member in the upcoming election. This application was reviewed by the 2009 Election Committee of local 1877 on September 11, 2009. This Election Committee consists of 7 persons. The chair was Victor Narro who was appointed by Local 1877 President Mike Garcia. The other members were elected to their positions - 3 from Southern California, 3 from Northern California. At the September 11, 2009 meeting, the Election Committee considered the question of whether a candidate for an Executive Board position should be disqualified if the application filed did not identify the specific Board involved. The importance of this information is that each Division throughout the State has its own Board and its own constituency of voters. The Election Committee decided by a vote of 4 to 3 that the failure to identify the specific Board involved warranted disqualification. As a result of this vote, Jose Garcia was found to be disqualified because he had not identified the specific Board he was running for. Garcia had identified his employer and job site, but the Election Committee did not find this to be information that saved him from disqualification. Garcia appealed this decision, but there has been no decision on the appeal.

Garcia is not on the present October 29 election ballot. He asks the Court to stop the scheduled election to decide that he should not have been disqualified; to add him to a new ballot and to conduct a new election in which he is a candidate. The first

issue for the Court in such a scenario is to consider his likelihood of success on the merits of his LMRDA claim. Given the criteria for LMRDA discipline violations, this conduct cannot be the basis for an unlawful discipline violation and requires the Court to consider it as a possible free speech violation under the LMRDA. Garcia has established his free speech conduct relevant to such a violation by evidence of his participation in a protest demonstration against the incumbent leadership of Local 1877 on February 14, 2009. There is, however, a factual question as to whether the September 11 conduct of the Election Committee can be considered to be retaliation caused by that exercise of Garcia's free speech. The seven month gap between the speech conduct and the asserted act of retaliation virtually eliminates any inference that the events can be causally linked because of the significant passage of time between them. As to the disqualification decision itself, on the present evidence, it is not obvious that this decision is objectively wrong. Additionally, the evidence before the Court does not establish that this disqualification was discriminatorily applied. As will be seen, there is evidence that one other potential candidate, who was also an administration dissident, was disqualified on this thesis, but there is no other evidence as to how this ground for disqualification was used, or if it was used, as to any other potential candidate for office.

On this evidence, then, Plaintiff Jose Garcia has not shown that it is likely that he will succeed on the merits of his LMRDA claim.

Plaintiff <u>Argelio Cordova</u> has been a member of Local 1877 for 10 years. He sought to be a candidate in the 2009 election for a

position as an Executive Board member. He was disqualified by the Election Committee on September 11, 2009 on the same thesis as Jose Garcia. The circumstances of his case are essentially the same as for Garcia and the Court reaches the same conclusion - he has not established a likelihood of success on the merits of his LMRDA claim.

Plaintiff Amelia Medina has been a member of Local 1877 for 14 years. She also filed nomination papers to run for an Executive Board position. She designated the specific Board she was running for and was not disqualified on that ground. She was disqualified, however, on another ground. When a candidate seeks nomination the rules require that the prospective candidate must file the signature of at least 50 members of the union who are within the limited voting constituency for the office which is sought and are in approval of their candidacy. The Election Committee reviews these applications to confirm whether the supporting signatories are valid voters. If the Election Committee decides that a supporter is disqualified, that signature is stricken. One obvious threshold circumstance that will result in a name being stricken is the case where the signature is not legible. If the Committee cannot recognize the name, it cannot be confirmed, and it is therefore stricken. Another basis for striking a name is a decision by the Election Committee that the supporter is not in good standing with the union. To be in good standing a person must be a member of the union and be fully paid up as to any dues which must be paid. At the September 11, 2009 hearing of the Election Committee it was decided by a 4-3 vote that whether or not a supporter was in good standing would be

determined by a review of their status as of the month of July 2009. If a member of the union was fully paid up on their dues as of July 2009, they would be considered to be in good standing. If they were not fully paid up in that month they would be considered to be not in good standing and their name would be stricken.

Amelia Medina submitted an application with some 57 supporting signatures. Upon review, on September 11, 2009, the Election Committee struck enough names to reduce her valid supporting signatures to less than 50 and she was disqualified as a candidate for that reason. The record does not show the reason used by the Election Committee in striking any of the names.

Here again the issue for preliminary relief analysis is the likelihood of success on the merits of this LMRDA claim. The record would support a finding that this plaintiff was running as one member of a group opposed to the incumbent administration, but there is no showing as to any particular exercise of free speech by Plaintiff. The decisive circumstances in this case are that: there is no evidence as to why any specific name was stricken; whether there is anything wrong with the use of the July 2009 time period to ascertain good standing status; or, whether the decision to strike the names of supporters which resulted in the disqualification of the plaintiff can be linked in any way to any exercise of free speech by the plaintiff. Under these circumstances, the Court believes that Plaintiff Amelia Medina has not established that it is likely that she will succeed on the merits of her LMPRDA claim.

Plaintiff <u>Oscar Alonzo</u> has been a member of Local 1877 for 7 years. He submitted an application to run for the office of

President of the union. He was disqualified by the Election Committee on September 11, 2009 on the same grounds as Amelia Medina - less than 50 valid supporters. The plaintiff says he was told by an Election Committee member that some of the name of his supporters were stricken because they were not in good standing, but there is no evidence as to the reason used by the Election Committee to strike any specific name. The other circumstances surrounding the ultimate decision of the Election Committee to disqualify this plaintiff are essentially the same as those present in the case of Plaintiff Amelia Medina and, for the same reasons, the Court decides that Plaintiff Oscar Alonzo has also failed to show a likelihood of success on the merits of his LMRDA claim.

Plaintiff John Gray has been a member of Local 1877 for two years. He filed nomination papers to run for a position as an Executive Board Member. On September 16, 2009 he was informed by the Election Committee that he had been disqualified because he was not in good standing in the Union. It appears that this decision was based on a conclusion that Gray had failed to pay all of the dues he was obligated to pay. Gray says this was not true as he pays his dues by an automatic check off from his earnings and that his employer is to notify the union of such payments. He attaches copies of two pay stubs showing that there were dues deductions in his pay checks for August 8, 2007 and September 2, 2009. At the hearing there was an argument by defense counsel that there was a delinquency for past dues which had not been

cured. There was also a response by Plaintiff's counsel questioning that premise, and also arguing that any such problem could be cured as part of the nomination process -- however, there were no additional evidentiary submissions that would resolve the factual issues attending the disqualification decision by the Election Committee. In this situation there are clearly factual issues to be resolved. In our context, where preliminary relief is being requested, unresolved material questions of fact militate against a finding that any likelihood of success on the merits has been established. This Court finds that to be the case here -- it cannot be said that the plaintiff has established any likelihood of success on his LMRDA claim that the Election Commission disqualification was a retaliation action caused by his exercise of free speech rights.

Plaintiff Hector Rincon was employed by Local 1877 in June 2004 to work as an external organizer for them. He was a member of another Union, the Building Service Staff Union (BSSU). In March 2009 he became a member of Local 1877. On April 20, 2009 he was called in by a Local 1877 official and presented with a written "termination," informing him that he was being terminated from SEIU Local 1877 over "work performance", which was further described as engagement in "campaign activities against the incumbent administrator." Local 1877 contends that this is a perfectly proper termination inasmuch as Gray's duties were to be a personal representative of the Local 1877 administration, and,

in such circumstance, disloyalty is a proper ground for termination. Gray's BSSU Union has filed a grievance concerning this termination which is now being processed. Gray did not submit nomination papers for any Local 1877 office in the 2009 election. He brings this law suit, however, on the premise that he would have filed if he had known of certain activities by Edward Sterns the President of SEIU. Those activities involve the fact that there is a requirement for SEIU elections that any candidate for a union office must have been a member of the union in good standing for at least two years before the election. In July 2009 Stern issued a waiver of the two year requirement for the 2009 election. Gray believes that there should have been a notice of this waiver, made in such a fashion that he would have learned of the waiver, and that he would have filed for office under such circumstances. At the hearing the Court inquired whether or not Rincon actually remained as a member of the SEIU Union after his "termination" on April 20, 2009. It turns out that this is a matter of present dispute. Given this fundamental factual question, and the completely unresolved issues of fact on Rincon's claim that some failure to act by Local 1877 can be considered to be an act of retaliation which was caused by his exercise of free speech, the Court finds that Plaintiff Hector Rincon has failed to establish that he is likely to prevail on his LMRDA cause of action.

Plaintiff Laura Plummer has been a member of Local 1877 for 16 years. She is the present Secretary - Treasurer of Local 1877, and is running for that position again in the October 2009 election having been found to be a qualified candidate by the Election Commission. She has been openly critical of the incumbent administration. She has filed a declaration which supports the issuance of a TRO because there has "not been a fair and democratic nomination process." Additionally, she states that she has been trying to get a copy of a list of union members to which she is entitled by the Union constitution, but that she has not been given such a list. This alleged conduct would be the only basis for a finding of retaliatory conduct made by the union against her. The declarations submitted on this issue raise questions of fact: as to the nature of the request made by Plaintiff; as to the circumstances of any response to her request by Local 1877 officials; and as to any further action by the plaintiff in light of Local 1877 responses. It may very well be that Plaintiff will be able to establish that defendants conduct in this matter constitutes a violation of the LMRDA by Local 1877, but it does not appear at this stage that that result can be said to be the likely result.

Plaintiff Doroteo Garcia has been a member of Local 1877 for 9 years. He is presently an Executive Board member. He is running for the office of First Vice President in the October 2009 election. Although he is also openly opposed to the incumbent

administration, he has been found qualified to run by the Election Committee. Similarly to Plaintiff Laura Plummer, Plaintiff Dototeo Garcia declares that he supports a TRO because of the "unfair and undemocratic nomination process." He also complains that union organizers have been going to worksites soliciting absentee ballots and using "the opportunity to make a 'pitch'" for the incumbent slate. It is not entirely clear that he is alleging that this conduct makes Local 1877 liable to him for an LMRDA violation, but it is clear that there is no evidence offered to support any such thesis. Under these circumstances, if it is accepted that plaintiff Dototeo Garcia is in fact claiming that he has been subjected to unlawful conduct under the LMRDA, Plaintiff has not demonstrated that he is likely to succeed on any such claim.

**IV. CONCLUSION**

There are two separate and independent reasons for the Court to deny this motion for preliminary relief.

The first is primarily factual -- the plaintiffs individually and collectively have failed to establish that they are likely to succeed on their LMRDA claims. This is, of course, not a finding that the Defendants are likely to succeed when the claims are ultimately resolved. It is simply a case where the present factual context does not warrant the granting of preliminary relief to the Plaintiffs. The Court further notes that this disposition will put the parties where they should be, in a

setting where the expertise of the Secretary of Labor can be brought to bear and the issue whether a union member is in "good standing" is a familiar subject matter.

The second reason is primarily legal. This is a dispute concerning a union election where the District Court should not intervene. Pursuant to the direction of the United States Supreme Court in Crowley, a District Court hearing a case under the LMRDA which requests preliminary relief, is to consider the specific remedy sought, and if that remedy requires "invalidation of the election already being conducted with court supervision of a new election", the Court is to refrain from any preliminary relief and notify plaintiffs that they are to utilize the remedies provided by Title IV. The District Court is to grant relief only in "appropriate" cases and is not to intervene unless Title I violations are easily remediable and there is no substantial delay of an ongoing election.

In this case a union election is to take place on Thursday, October 29th. A nomination process has been completed, hundreds of candidates for some 44 offices throughout the state of California have been qualified. Ballots for the election have been printed, absentee ballots have been distributed, and absentee voting has begun. Plaintiffs now ask the Court to order that the election cannot be held, order the union to undertake a new qualification process, order the qualification of new candidates, order new ballots to be printed, and to designate the time for a

new election. This is very clearly a case where there would be substantial delay, invalidation of an on-going election, and Court supervision of a new election. The Court finds that this is a separate and sufficient ground to deny the motion.

ACCORDINGLY, for the reasons stated, Plaintiffs motion for preliminary relief is DENIED.

DATE:October 27, 2009

D. Lowell Jensen
United States District Judge